# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

**In Re**

HAROLD AMIDON and
YVONNE AMIDON,

        **Debtors.**

**Bankruptcy Case
No. 09-02445-JDP**

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    Joseph Ammirati, Nampa, Idaho, Attorney for Debtors.

    Kathleen McCallister, Kuna, Idaho, Chapter 13 Trustee.

## Introduction

On August 17, 2009, Debtors Harold and Yvonne Amidon

("Debtors") filed a petition for relief under chapter 13[1] of the Bankruptcy

Code.  Docket No. 1.  The chapter 13 trustee, Kathleen McCallister

_____

    [1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 1

("Trustee"), objected to confirmation of Debtors' proposed plan, citing a

host of issues.  Docket No. 21.  However, the parties agree that one, hotly-

debated, threshold question must be resolved before the other

confirmation issues should be addressed:  whether, in calculating Debtors'

monthly disposable income, they may deduct certain mortgage expenses

on a home which they intend to surrender.  *See* Docket No. 26.

Following a hearing on December 1, 2009, as agreed, the parties

submitted a stipulation of material facts and written briefs outlining their

legal arguments.  Having reviewed the record, the arguments of the

parties, and the applicable law, the Court concludes that in determining

Debtors' monthly disposable income, they may not deduct mortgage

expenses for a home they intend to surrender.[2]

---

[2] This Memorandum sets forth the Court's findings of fact and
conclusions of law.  Rules 7052, 9014.

MEMORANDUM OF DECISION - 2

**Facts**[3]

On the same day that Debtors filed their petition, they filed a

Chapter 13 Statement of Current Monthly Income and Calculation of

Commitment Period and Disposable Income, or Form B22C.  Docket No. 5.

In this form, Debtors list current monthly income of $6,959 (for an annual

income of $83,508), which all parties agree is in excess of the applicable

Idaho median income for a two-person household.[4]  From this income,

Debtors deducted a number of expenses, including $3,807[5] representing

the total of payments on their first and second home mortgages.  By their

math, Debtors suggest they have a negative monthly disposable income of

$337.

Debtors also filed their proposed chapter 13 plan on August 17,

---

[3]  These facts are drawn primarily from the parties' stipulation of facts.
Docket No. 30.  Additional facts are gleaned from Debtors' petition and other
pleadings, of which the Court may take judicial notice.  Fed. R. Evid. 201.

[4]  At the time this bankruptcy case was filed, the median income for a
household of two in Idaho was $51,946.

[5]  The monthly payment on Debtors' first mortgage is $3,064 and the
monthly payment on Debtors' second mortgage is $743.

MEMORANDUM OF DECISION - 3

2009.  Docket No. 9.  Although Debtors checked the box at the top of their

Form B22C indicating that the applicable commitment period was five

years, their plan proposes only 36 monthly payments of $1,200.[6]  Under

§ 4.3 of their plan, Debtors propose to surrender their interest in their

primary residence.  In their bankruptcy schedules, Debtors indicate that

the home has a current value of $350,000, and that it is secured by first and

second mortgages with balances of $399,437 and $96,516, respectively.

Trustee contends that in calculating their monthly disposable

income, Debtors should not be allowed to deduct the $3,807 mortgage

payments on a house which they intend to surrender, and that instead,

they should be limited to the $1,012 statutory housing allowance.[7]  With

those adjustments, Trustee asserts Debtors' Form B22C would reflect a

positive monthly disposable income of $2,458.  Debtors disagree with

---

[6]  Under § 1325(b)(4)(A)(ii), the "applicable commitment period," or in
other words, the minimum allowed term of a debtor's plan, is not less than 5
years if the debtor's current monthly income exceeds the applicable state's
median family income, unless the plan proposes to pay all allowed unsecured
claims in full.

[7]  On Schedule J, Debtors listed a housing expense of $1,800.

MEMORANDUM OF DECISION - 4

Trustee's position, contending that, under the Code, they may deduct the mortgage payments, and as a result may propose a 36 month plan.

### Decision

Trustee does not challenge Debtors' calculations regarding their current monthly income. Rather, Trustee targets Debtors' expense deductions. Trustee insists Debtors' plan cannot be confirmed.

Because Trustee has objected, and Debtors' plan does not propose to pay creditor claims in full, the Court cannot confirm their plan unless it provides that "all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). Although the Code does not define "projected disposable income," it defines "disposable income" as "current monthly income . . . less amounts reasonably necessary to be expended" for the support and maintenance of the debtor. 11 U.S.C. § 1325(b)(2). Furthermore, for above-median income debtors, the Code requires that "[a]mounts reasonably necessary to be expended . . . shall be determined in accordance with

MEMORANDUM OF DECISION - 5

subsections (A) and (B) of section 707(b)(2)[.]"  11 U.S.C. § 1325(b)(3).

Under § 1325(a)(5)(C), a chapter 13 debtor may, under a plan,
propose to treat an allowed secured claim by "surrender[ing] the property
securing such claim to such holder[.]"  In calculating monthly disposable
income, bankruptcy courts have split on the propriety of deductions for
secured debt payments that will not exist on a "going-forward basis"
under a debtor's plan, *i.e.*, when the collateral securing the debt is being
surrendered through that plan.  *See generally* Hon. Ray C. Mullins &
Elizabeth B. Rose, *Perfectly Clear or Clear as Mud?  A Review of Selected
BAPCPA Consumer Issues*, 2008 Norton Annual Survey of Bankr. Law Part
II, § 1 n.23 (collecting cases).  This division in authority has been profound
in this Circuit.

For example, just prior to Debtors' bankruptcy filing, in a case
factually similar to this one, this Court addressed this very issue.  *See In re
Varner*, 09.2 I.B.C.R. 52 (Bankr. D. Idaho 2009).  In a thoughtful, reasoned
decision, Chief Judge Myers ultimately concluded the debtor in that case
could deduct payments for secured debt when calculating her disposable

MEMORANDUM OF DECISION - 6

income, despite her intention to surrender the property securing the debt

and discontinue making payments under her chapter 13 plan. *In re Varner*,

09.2 I.B.C.R. at 54. In reaching that conclusion, Chief Judge Myers noted

that even after the Ninth Circuit decision in *Maney v. Kagenveama (In re*

*Kagenveama),* 541 F.3d 868 (9th Cir. 2008), there was arguably room to hold

that expenses should be viewed through a forward-looking, rather than

historical lens.[8] *In re Varner*, 09.2 I.B.C.R. at 54. At least one bankruptcy

court had taken that approach, *see In re Reyes*, 401 B.R. 910, 913-14 (Bankr.

C.D. Cal. 2009), while another bankruptcy court disagreed, opting for a

consistent approach to both the income and the expense side of the

calculus. *See In re Smith*, 401 B.R. 469, 474 (Bankr. W.D. Wash. 2008)

(noting "it would . . . be inconsistent to apply a  backward-looking

---

[8] In *Kagenveama*, the Ninth Circuit rejected the trustee's argument that
§ 1325(b)(1)(B) requires a forward-looking determination of projected disposable
income. *Id.* at 873-74. In addition, the Ninth Circuit rejected the argument that
the disposable income calculation of § 1325(b)(2) was a presumptive starting
point which could be supplemented by evidence of future or actual finances of
the debtor. *Id.* at 874. However, as Chief Judge Myers pointed out in *Varner*,
*Kagenveama* was primarily focused on income, and did not directly address the
expense side of the calculus.

MEMORANDUM OF DECISION - 7

approach to income, yet adopt a forward-looking approach in determining

expenses.").  Chief Judge Myers found the analysis in *Smith* to be more

persuasive, and reached the same conclusion as that court.[9]  *In re Varner*,

09.2 I.B.C.R. at 54.

However, following this Court's decision in *Varner*, the Ninth

Circuit issued its decision in *Ransom v. MBNA, America Bank, N.A. (In re*

*Ransom)*, 577 F.3d 1026 (9th Cir. 2009).  In *Ransom*, the issue was whether a

debtor who owned his auto free and clear of encumbrances or lease

obligations could nonetheless take a vehicle ownership deduction when

calculating his disposable income.  The Ninth Circuit held that he could

not, noting how ironic it would be if a debtor were allowed to diminish

payments to unsecured creditors based on a fictitious expense that was not

incurred by that debtor.  *Ransom*, 577 F.3d at 1026.

---

[9]  As noted in the *Varner* decision, *Smith* was appealed to the Ninth Circuit
Bankruptcy Appellate Panel.  *See Am. Express Bank, FSB v. Smith (In re Smith)*, 428
B.R. 359 (9th Cir BAP 2009).  However, at the time this Court issued its decision
in *Varner*, the BAP had conducted oral argument in *Smith*, but had not yet ruled.
On October 5, 2009, the BAP issued its decision in *Smith*.  *Id.*  The BAP's decision
and analysis is discussed below.

MEMORANDUM OF DECISION - 8

Then, shortly thereafter, the Ninth Circuit Bankruptcy Appellate

Panel issued its decision concerning the Washington case in which the

Panel reversed the bankruptcy court decision in the debtor's favor. *Smith*,

418 B.R. at 359. In *Smith*, the majority explained that it would "not read

*Kagenveama* as binding precedent with respect to the calculation of

expenses under sections 1325(b)(2) and (b)(3)." *Id.* at 366. As a result, it

reasoned "the [*Kagenveama*] opinion does not bind us to a rule of how to

determine the expenses that must be applied to the income side of the

equation, nor does it compel us to impose a symmetry that neglects the

reality of the case before us[.]" *Id.* at 367-68.

In *Smith*, the majority explained that § 1325(b)(2) and (b)(3) perform

distinct functions and must be viewed in sequence. Subsection (b)(2)

focuses on what expenses the debtor determines are necessary, and once

that is established, subsection (b)(3) governs what amount of those

expenses may be deducted from a debtor's current monthly income.

*Smith*, 418 B.R. at 369. Viewed in this manner, these subsections require a

two-step inquiry:

MEMORANDUM OF DECISION - 9

> [I]f an expense is not reasonably necessary for the debtor's
> and/or dependants' maintenance and support, the inquiry
> ends at section 1325(b)(2) as there is no "amount" to
> determine in section 707(b)(2) via section 1325(b)(3). . . .
>
> If the expense is reasonably necessary for the debtor's and/or
> dependants' maintenance and support, then section 1325(b)(3)
> requires the court to determine the *amount* in accordance with
> section 707(b)(2).

*Smith*, 418 B.R. at 368 (emphasis in original).  In *Smith*, the debtors

proposed to surrender two houses and one vehicle.  The majority reasoned

that by virtue of their decision to surrender that property, the debtors had

themselves determined that the associated expenses were not reasonably

necessary for their support and maintenance, and as a result, § 1325(b)(3)

never came into play.[10]

Aside from the amount of property being surrendered and the

amounts involved, there are no real factual distinctions between this case

---

[10]  Judge Hollowell authored an impressive dissent in *Smith* indicting the
majority's decision to read §§ 1325(b)(2) and (3) sequentially as an exercise in
"contorted statutory analysis."  *Smith*, 418 B.R. at 371.

MEMORANDUM OF DECISION - 10

and *Varner.* Indeed, were it not for the *Ransom* and *Smith*[11] decisions, there would be little reason for this Court to deviate from the teachings of *Varner.* However, these appellate decisions significantly altered the existing chapter 13 landscape. Is *Varner* good law after *Ransom*? *Smith* indicates the later Ninth Circuit decision compels a re-examination of the issues, and a different result.

At bottom, this Court need not indulge in extensive statutory construction and analysis, since the respective virtues and limitations of the parties' positions have been amply explored in these and other reported decisions concerning this issue. While the analysis in *Varner* and the dissent in *Smith* are both highly defensible, under the circumstances, this Court is persuaded to follow the approach taken by the *Smith*

---

[11] The BAP's decision in *Smith* has been appealed, but the Ninth Circuit's public docket indicates that the appeal remains in its early stages such that no decision is imminent. Thus, there is no justification to await further instruction on this issue, even though the question is a difficult one, and ultimately, the Ninth Circuit may determine that the course elected by the BAP in *Smith* and by this Court here, is flawed.

MEMORANDUM OF DECISION - 11

majority.[12]  At the end of the day, the Court prefers the common-sense

interpretation given to the Code in *Smith*, an approach that is seemingly

encouraged in *Ransom*, albeit arguably at odds with the more mechanical

application of the Code adopted earlier by the court of appeals in

---

[12]  A comment is required at this point concerning  whether BAP decisions are binding upon this Circuit's bankruptcy courts.  This bankruptcy judge currently serves as a member of the Ninth Circuit's BAP.  Having observed the workings of the Panel, and being familiar with those bankruptcy judges who staff BAP panels, this judge is inclined to give great deference to the Panel's decisions.  Of course, the Ninth Circuit has declined to rule on whether bankruptcy courts are bound by the decisions of the BAP.  *See Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990).  In the same decision, however, the court of appeals unremarkably held that BAP decisions are not binding on district courts.  *Id.*  The BAP, on the other hand, has decided its case law has precedential value in the circuit's bankruptcy courts.  *See, e.g., In re Windmill Farms, Inc.*, 70 B.R. 618, 622 (9th Cir. BAP 1987) *rev'd on other grounds*, 841 F.2d 1467 (9th Cir. 1988).  In addition, scholars point to persuasive policy arguments favoring the binding effect of BAP case law.  *See, e.g.,* Thalia L. Downing Carroll, *Why Practicality Should Trump Technicality: A Brief Argument for the Precedential Value of Bankruptcy Appellate Panel Decisions*, 33 Creighton L. Rev. 565, 573-578 (2000) (noting "When BAP decisions have no precedential value whatsoever, the judicial system is diminished.  If bankruptcy courts, district courts, and BAPs are all allowed to formulate their own decisions on issues of law, a plethora of law will be created and much time will be wasted with little benefit.  The public will not know how to plan their affairs and the judiciary itself will be unsure of which law to follow.").  While this is an interesting debate, it is a question for the Ninth Circuit, not this bankruptcy judge, to authoritatively resolve.  In this case, it is enough that this Court is simply persuaded the majority in *Smith* called the question correctly as a basis for adopting its resolution.  If Debtors disagree, as noted in *Bank of Maui,* they can solicit the district court's views on this complex issue.

MEMORANDUM OF DECISION - 12

*Kagenveama*.  In other words, like in *Smith*, Debtors have determined that

their home is not reasonably necessary for their support by virtue of their

decision to surrender it through their plan.  Because the Code dictates that

only reasonably necessary expenses may be deducted, Debtors should not

be able to deduct phantom first and second mortgage payments when

calculating their monthly disposable income.  Simply put, like the *Ransom*

court, this Court declines to allow Debtors to significantly reduce

payments to their unsecured creditors based upon fictitious expenses.

## Conclusion

For these reasons, Trustee's objection to confirmation of Debtors'

current plan will be sustained, and confirmation denied.  A separate order

will be entered requiring that Debtors file an amended plan and an

amended Form B22C on or before February 19, 2010.  Counsel for Debtors

shall insure that a hearing on confirmation of the amended plan shall be

scheduled for a confirmation hearing on the next available date.

MEMORANDUM OF DECISION - 13

Dated:  February 2, 2010

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 14